UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANICE TROISI,<br>  Plaintiff, | : | PRISONER CASE NO.<br>3:18-cv-1073 (JCH) |
| v. | : | |
| D.K. WILLIAMS, et al.,<br>  Defendants. | : | OCTOBER 31, 2018 |

**INITIAL REVIEW ORDER**

**I. INTRODUCTION**

The plaintiff, Janice Troisi ("Troisi"), formerly incarcerated at the Federal Correctional Institution in Danbury ("FCI Danbury"), Connecticut,[1] has filed a Complaint pro se under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). See generally Complaint ("Compl.") (Doc. No. 1). Troisi sought leave to proceed in forma pauperis. Motions for Leave to Proceed in Forma Pauperis (Doc. Nos. 2, 7, 11). On September 12, 2018, the court granted Troisi's application. Order (Doc. No. 12).

The Complaint names two defendants: Warden D.K. Williams and Health Care Services. Troisi contends that the defendants violated her Eighth Amendment rights and committed medical malpractice through deliberate indifferent to her serious medical

---

[1] Troisi has provided documentation showing that she is serving the remainder of her sentence on home confinement. See Motion for Leave to Proceed in Forma Pauperis (Doc. No. 11) at 7.

needs. Compl. at ¶ 1. She also includes references to the Americans with Disabilities Act and denial of telephone calls. See id. at ¶¶ 1(c), 1(e), .

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard. See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

## II. ALLEGATIONS

Troisi suffers from spinal stenosis, depression, anxiety, insomnia, hypertension, bursitis, and hypercholesterolemia. Compl. at ¶1. She experiences pain. Id. On April 6, 2016, she entered the Prison Camp at FCI Danbury. Id. Troisi provided Danbury Medical Services copies of her medical records. Id. at ¶1(a). She was not offered any pain medication. Id. Troisi's complaints of pain were ignored by Danbury Medical Services, and she was advised to purchase pain medication from the commissary. Id. At some point, Troisi was given Meloxicam, a mild pain medication. Id.

Troisi's complaints about the ineffectiveness of her medication were ignored. Id. She was told that pain was part of her condition and told that she could be sent to the medical facility in Texas. Id. In response to frequent requests for examination by an orthopedist, Troisi was told she had to wait her turn. Id. However, inmates admitted after Troisi were seen before her. Id.

Troisi was seen by an orthopedist in July 2016. Id. He administered a cortisone injection to her left hip and knee and ordered a neurological consult for spinal stenosis. Id. Troisi saw a neurologist in October 2016, at which time he ordered a surgical consult. Id. On January 13, 2017, the orthopedic surgeon's physician's assistant ordered an MRI. Id. The test was not performed until October 2017. Id.

In March 2017, Troisi's roommate told her that she could obtain prescription strength Ibuprofen through the "pain registry." Id. After consulting Health Care Services, Troisi was registered and began receiving the medication. Id. Another inmate told Troisi that she could receive injections similar to those she had received before she

was incarcerated.  Id.  When she requested the injections, Troisi was told to wait for the MRI results.  Id.

On February 22, 2017, Troisi awoke with red, swollen, and watery eyes.  Id. at ¶1(b).  A Physician's Assistant ("PA") diagnosed her with blepharitis and, ignoring her request for Prednisone eye drops, prescribed oral Prednisone and instructed Troisi to follow-up with the Nurse Practitioner ("NP") in a few days.  Id.  The NP refused a request for eye drops and continued the Prednisone for five additional days.  Id.  On March 8, 2017, the Prednisone was discontinued.  Id.  The condition appeared to have resolved.  Id.

Two days later, the condition returned.  Id.  Troisi's left eye was completely swollen shut and her right eye was partially swollen shut.  Id.  Her face was red, rashy, and puffy.  Id.  The NP prescribed Triacinolone cream for Troisi's face and ordered an increased dose of Prednisone.  Id.  Two days later, Troisi's face appeared burned, and the rash had spread to her hands.  Id.  Troisi saw the NP and requested lab work and dermatology, allergy, and immunology consults.  The requests were refused.  Id.

On March 16, 2017, the NP dismissed the burns on Troisi's face.  Id.  She prescribed eye drops as well as Zantac and Doxepin, an antidepressant.  Id.  The NP told Troisi that the medications were prescribed for their "antihistaminic side effects."  Troisi disagreed but her concerns were dismissed.  Id.

On March 20, 2017, Nurse McGregor noticed the rash while dispensing medication and asked Dr. Tindal, the medical director, to see Troisi.  Id.  Dr. Tindal diagnosed severe first degree burns, ordered lab tests, consults, and an antihistamine.

4

Id. He discontinued Triacinolone because it was contraindicated for use on the face and ordered another cream. Id.

On April 3, 2017, the rash had spread over Troisi's entire body. Id. The NP refused care. Id. On April 5, 2017, Troisi saw a dermatologist and an allergist. Id. The dermatologist discontinued Prednisone, performed a biopsy, and administered a cortisone injection. Id. The allergist prescribed Zyzyl and Cereve cream. Id. After waiting a week for the medications, on April 12, 2017, Troisi asked the NP about the consults and, with some effort, obtained the medications. Id.

On April 18, 2017, Troisi complained to the NP that she was experiencing no relief from her symptoms. Id. The NP told Troisi to give the medication time to work. Id. On April 20, 2017, Troisi sent a request to Nurse McGregor. Id. Dr. Tindal prescribed Mycophenylate, an immunosuppressant, which provided relief within 48 hours. Id. The rash is resolved, but Troisi has scars, occasional "rashy outbreaks," and a low white blood count. Id. The dermatologist has refused further testing to determine the cause of the rash. Id.

In July 2017, Troisi experienced an exacerbation of spinal stenosis symptoms, namely, increased pain and numbness in her lower legs. Id. at ¶1(c). She fell twice and briefly lost consciousness twice because of the pain. Id. When she requested an MRI, the NP told her, "why bother, we're not going to give you the surgery and if you persist, we'll send you to Texas." Id.

Troisi requested assistance in the form of a person to carry her bag from the commissary and a tray in her room for meals. Id. The requests were denied. Id. Troisi

made the defendants aware that these actions were in violation of prison directives.  Id.
Troisi began spending more time in bed and supplemented her meals with items from
the commissary and donations from other inmates.  Id.  Troisi told Ms. McCoy, the head
of Health Services, the reason for her requested accommodations.  Id.  Ms. McCoy
stated, "we don't do that[.]"  Id.

In October 2017, Troisi again sought assistance from Health Services.  Id.  She
had not gone to the dining hall for two months and was being wheeled to the
commissary by another inmate.  Id.  She suffered pain and fell more frequently.  Id.  She
submitted requests for accommodations to staff ranging from the counselor to the
warden, but received no responses.  Id.  On October 5, 2017, Troisi saw Dr. Green.  Id.
He did not examine her and told her that FCI Danbury did not have to comply with the
Americans with Disabilities Act.  Id.  About this same time, the NP began completing
paperwork for Troisi's transfer to Texas for medical treatment.  Id.

The MRI was performed in late October 2017.  Id.  In December 2017, the NP
told Troisi that the MRI showed a deterioration from a March 2016 MRI.  Id.  There were
two additional cysts on Troisi's spine.  Id.  The NP told Troisi that, if she reported the
worsening condition, Troisi would get assistance but declined to do so because she
would be disciplined for doing so.  Id.  The NP also told Troisi that medical services at
FCI Danbury were terrible.  Id.

On January 12, 2018, Troisi fell fracturing her medial malleolus, tibia, and fibula.
Id. at ¶1(d).  She waited on the floor for over an hour for help to arrive.  Id.  Ms.
McGregor, who Troisi has specifically requested, applied a splint and arranged transport

to Danbury Hospital. Id. Troisi was accompanied by a correctional officer ("CO"). Id. Troisi underwent surgery the next day and remained in the hospital for five weeks. Id. During that time Troisi had daily physician visits, around-the-clock nursing care, and physical therapy three times per week. Id. After five weeks, Troisi still could not bear weight on her leg. Id.

During the first week she was in the hospital, a CO remained with Troisi. Id. at ¶1(e). On January 19, 2018, the CO was removed and she was placed on unsupervised furlough. Id. During that first week, Troisi was not permitted to call her family or give the hospital her health care proxy. Id. Once Troisi was placed on unsupervised furlough, the hospital permitted Troisi to call her family. Id. However, the prison camp unit manager had the phone removed and refused to permit Troisi to call her family or legal services. Id. A CO regularly visited Troisi at the hospital but refused her requests for a phone call and said that he would relay the request to prison staff. Id.

On February 16, 2018, Officer Rivera asked Troisi to sign papers regarding a transfer to Texas. Id. When Troisi asked about the treatment she would receive in Texas and requested an attorney call, Officer Rivera left. Id. Captain Whitby told Troisi that, if she refused, she would be transferred by force. Id. Troisi told him that she had too much dignity to physically refuse the transfer. Id. Captain Whitby denied a legal call. Id. Troisi was transferred to Texas on February 20, 2018. Id. The conditions in Texas exacerbated Troisi's medical conditions. Id.

## III. ANALYSIS

On the Civil Cover Sheet submitted with the Complaint, Troisi states that she brings only an Eighth Amendment claim for deliberate indifference to medical needs.

See Civil Cover Sheet (Doc. No. 1-1) at 1. In the introductory paragraph of the Complaint, she lists the Eighth Amendment claims and adds state law claims for reckless disregard and malpractice. See Compl. at ¶ 1. Within the body of the Complaint, Troisi refers to the Americans with Disabilities Act and denial of phone calls while she was hospitalized. See id. at ¶¶1(c), 1(e). The court addresses all of these claims below.

      A.      Americans with Disabilities Act

Troisi references the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101, et seq. She alleges that the defendants did not accommodate her disability. See Compl. at ¶ 3. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" to include state and local government agencies, but not federal agencies. See 42 U.S.C. § 12131(1); see also Cellular Phone Taskforce v. FCC, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government."); Mackey v. United States Dep't of Justice, No. 16-CV-3865(JFB)(ARL), 2018 WL 4214336, at *6–7 (E.D.N.Y. Aug. 8, 2018) (dismissing ADA claims against BOP for lack of subject matter jurisdiction (citing cases)), report and recommendation adopted, No. 16-CV-3865(JFB)(ARL), 2018 WL 4211308 (E.D.N.Y. Sept. 4, 2018).

As the BOP is not subject to the ADA, Troisi's ADA claims are dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code.

B. State Law Tort Claims

Troisi references state law tort claims for reckless disregard and malpractice. ""[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA [Federal Tort Claims Act, 28 U.S.C. § 1346(b)]." Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994). The FTCA waives sovereign immunity for certain tort claims. See 28 U.S.C. § 2679. However, a jurisdictional prerequisite to an FTCA suit is that the plaintiff first pursue administrative remedies with the appropriate federal agency. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 112-13 (1993). As it is not clear that Troisi has pursued her administrative remedies regarding these claims, the court declines to construe this action as brought pursuant to the FTCA. Accordingly, the state law tort claims are dismissed, without prejudice to refiling in an appropriate FTCA action.

C. Deliberate Indifference to Medical Needs

Troisi alleges that the defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment. In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court permitted suits against federal officials in their individual capacities for violation of constitutional rights. Thus, the defendants must be individual federal officers. The only individual federal officer named as a defendant is Warden Williams. Health Care Services is not an individual federal official and cannot be sued under Bivens. See Sereika v. Patel, 411 F. Supp. 2d 397, 400, 402 (S.D.N.Y. 2006) (dismissing Bivens claim against

9

Metropolitan Correctional Center's Health Services Unit because Bivens actions are not cognizable against federal agencies); see also Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP.").

In addition, "[b]ecause vicarious liability is inapplicable to Bivens . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Ganek v. Leibowitz, 874 F.3d 73, 92 (2d Cir. 2017) (to state Bivens claim, plaintiff must allege that defendant violated plaintiff's constitutional rights through his own actions). Troisi references Warden Williams only in connection with her ADA claim. As Warden Williams is not alleged to have been deliberately indifferent to Troisi's medical conditions or to have denied her medical care, the Eighth Amendment claim is dismissed as to Warden Williams. Troisi may seek to pursue her Eighth Amendment claim provided she can identify, in an Amended Complaint, the medical staff members who were deliberately indifferent to her medical needs. To do so, she must also move to add a defendant or defendants.

   D. Access to Family and Attorney

Finally, Troisi contends that she was denied calls to her family and attorney while hospitalized. See Compl. at ¶ 1(e). Inmates have a First Amendment right to communicate with family and friends. This right may be exercised in several ways, by letters, telephone calls, or personal visits. See Overton v. Bassetta, 539 U.S. 126, 135 (2003) (noting that inmates may communicate with others through letters, phone calls,

and visits). Troisi does not allege that she was unable to communicate with her family through other means. Thus, she does not state a cognizable constitutional violation based on the inability to telephone them while hospitalized. See Barletta v. Quiros, No. 3:10-cv-939(AVC), 2013 WL 12073470, at *7 (D. Conn. Feb. 21, 2013) (plaintiff failed to state First Amendment claim for preclusion of one means of communication where he had other means of communication) (citations omitted).

The claim that Troisi was unable to telephone her attorney fails as well. Prisoners have a constitutional right of access to the courts, which right has been construed to include the ability to call their attorneys outside the context of criminal proceedings. See McIntosh v. United States, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016) (citing cases). To state a claim for denial of access to the courts, however, Troisi must allege facts showing that she suffered an actual injury. See Lewis v. Casey, 518 U.S. 343, 349 (1996). She must allege facts showing that the defendant either took or was responsible for an action that interfered with her ability to pursue a legal claim. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citations omitted). Troisi identifies no legal claim that she was unable to pursue because she was unable to phone her attorney during the five weeks she was hospitalized, nor pled any allegations that the Warden is the person who prevented her from contacting her attorney. Thus, she fails to state a plausible access to courts claim.

The claims regarding the ability to telephone her family or attorney while hospitalized are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**ORDERS**

(1) The ADA claim, the state law claims, and the First Amendment claim for inability to telephone family and her attorney are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The Eighth Amendment claim is **DISMISSED** without prejudice. Troisi may pursue any FTCA claim in an appropriate action.

(2) The Clerk is directed to close this case.

(3) Troisi may move to reopen this case within 60 days and file an amended complaint to assert her Eighth Amendment claim if she can identify the persons who were deliberately indifferent to her serious medical needs.

**SO ORDERED.**

Dated this 31st day of October 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge